RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 15-1013

MARIO JAY ASAKEVICH,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cr-20343—Sean F. Cox, District Judge.

Decided and Filed: January 11, 2016

Before: SUHRHEINRICH, SUTTON, and COOK, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Patricia Gaedeke, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan,
for Appellee. Mario Jay Asakevich, Tucson, Arizona, pro se.

───────────────

**OPINION**

───────────────

SUTTON, Circuit Judge. May a federal prisoner ask a court to grant him an extension of
time to file a 28 U.S.C. § 2255 motion before he has filed the § 2255 motion? The answer, we
think, is no, and accordingly we affirm the district court's dismissal.

In 2011, Mario Jay Asakevich pleaded guilty to distributing child pornography and
attempting to entice a minor via the internet. *See United States v. Asakevich*, No. 12-1454, slip
op. at 1–2 (6th Cir. Mar. 6, 2013); *see also* 18 U.S.C. §§ 2252A(a)(2), 2422(b). The district

1

court sentenced Asakevich to life in prison. *Asakevich*, No. 12-1454, slip op. at 2. We dismissed his appeal, *id.* at 5, and the U.S. Supreme Court denied Asakevich's petition for a writ of certiorari on October 7, 2013, *Asakevich v. United States*, 134 S. Ct. 169 (2013) (mem.).

At that point Asakevich's conviction became final, and he had one year to file a motion to vacate his sentence. 28 U.S.C. § 2255(f)(1); *Clay v. United States*, 537 U.S. 522, 527 (2003). During that year, Asakevich did not file a § 2255 motion, and he has not filed one since. Instead, on October 6, 2014, shortly before the limitations period was set to expire, Asakevich filed a pro se "Motion for Extension of Time to File 28 U.S.C. § 2255 Motion," asking the district court to pre-approve a ninety-day extension for filing a § 2255 motion. R. 48 at 1. The district court denied Asakevich's motion, reasoning that "there does not appear to be any published authority that would permit this Court to enlarge the time for filing a § 2255 motion before the statute of limitations expires." R. 51 at 3. Asakevich appeals.

The problem for Asakevich is that, in the aftermath of a final judgment of conviction and sentence and in the absence of a pending § 2255 motion, there was no action in the district court to which the motion could apply. Federal courts do not lightly grant relief in non-existent cases. Still less do they offer advisory opinions about what they might do *if* an action were filed.

Article III of the U.S. Constitution empowers federal courts to hear "Cases" or "Controversies," nothing more. U.S. Const. art. III, § 2; *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). And "no justiciable 'controversy' exists when parties . . . ask for an advisory opinion." *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007). This prohibition covers a party's—in truth a non-litigant's—request for an "opinion[] advising what the law would be upon a hypothetical state of facts." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quotation omitted). In this instance, all that Asakevich requested was an advisory opinion about whether he could obtain an extension for an action not yet in existence and one that may never come into existence. At the time Asakevich sought the extension, to be sure, he had the right to file a § 2255 motion to obtain his release from the custody of the United States or to reduce his sentence. But instead of filing the § 2255 action first, he filed a contingent extension request—a request contingent on filing a later § 2255 action. Unhappily for him, the

federal courts have no license to provide such advice—to say that an extension would be granted and the § 2255 action accepted *if* Asakevich chose to file one.

Once "[t]he criminal proceeding has ended"—once the district court has entered a final sentence and conviction and once all appellate avenues have been explored or lapsed—a federal district court has authority to assess the validity of the conviction only after the defendant commences "an independent and collateral inquiry into the validity of the conviction." 3 Charles Alan Wright et al., Federal Practice and Procedure § 622 (4th ed. 2015) (quotation omitted). A § 2255 motion presents just such a collateral inquiry into the conviction and sentence, but a request to find out what might happen if Asakevich files a § 2255 motion *in the future* does not.

No doubt, federal courts may permit equitable tolling of the § 2255 statute of limitations. *See Solomon v. United States*, 467 F.3d 928, 933–35 (6th Cir. 2006); *see also Holland v. Florida*, 560 U.S. 631, 645 (2010). But that grace period applies only to an actually filed § 2255 action. It does not permit pre-approval of such tolling based on a "hypothetical state of facts." *Chafin*, 133 S. Ct. at 1023 (quotation omitted). The federal courts have no license to issue advisory opinions, *Golden v. Zwickler*, 394 U.S. 103, 108 (1969), and we may not bend (or for that matter ignore) that principle here, no matter how convenient or efficient the request might otherwise be.

Even if Asakevich's motion could satisfy this core Article III imperative (which it cannot), he fails to identify any statute that would empower the district court to act. "The statutory premise for the court's original authority"—18 U.S.C. § 3231, which gave the district court original jurisdiction over Asakevich's criminal case—does not "by itself provide a basis for considering" his extension-of-time motion. *See United States v. Lucido*, 612 F.3d 871, 874 (6th Cir. 2010). Section 2255 does not help Asakevich either. It lists many situations in which the statute of limitations may run longer than the one year from his final judgment. *See* 28 U.S.C. § 2255(f)(2), (f)(3), (f)(4). Conspicuously missing from that list is anything that would allow a district court to consider a motion for an extension of time before the one-year period had run. The absence of a provision authorizing the pre-filing approval of equitable tolling—when § 2255(f) itemizes other provisions that have a similar effect—"justif[ies] the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

Nor is there any "other statute" that "directly empowers" the district court to address Asakevich's motion. *See Lucido*, 612 F.3d at 874. Consider, as a point of contrast, 28 U.S.C. § 2101, which governs petitions for writs of certiorari to the U.S. Supreme Court with respect to existing actions. The provision allows "[a] justice of the Supreme Court, for good cause shown . . . [to] extend the time for applying for a writ of certiorari for a period not exceeding sixty days." 28 U.S.C. § 2101(c). Markedly absent from § 2255 is any comparable authority, whether for existing actions or not.

Our court has rejected similar requests before in several unpublished opinions. *See, e.g.*, *United States v. Moore*, 56 F. App'x 686, 687 (6th Cir. 2003) (per curiam); *Reed v. United States*, 13 F. App'x 311, 313 (6th Cir. 2001) (per curiam); *United States v. Chambliss*, 145 F.3d 1334, 1998 WL 246408, at *1 (6th Cir. 1998) (per curiam) (unpublished table disposition). And all of our sister circuits agree with this conclusion, save one. *See, e.g.*, *United States v. Leon*, 203 F.3d 162, 164 (2d Cir. 2000) (per curiam); *United States v. White*, 257 F. App'x 608, 609 (4th Cir. 2007) (per curiam); *United States v. McFarland*, 125 F. App'x 573, 574 (5th Cir. 2005) (per curiam); *Swichkow v. United States*, 565 F. App'x 840, 844 (11th Cir. 2014) (per curiam); *United States v. Glover*, No. 05-3110, 2006 WL 3798926, at *1 (D.C. Cir. June 27, 2006) (per curiam).

The exception is the Third Circuit, which held that district courts have jurisdiction to consider such motions. *See United States v. Thomas*, 713 F.3d 165, 173–74 (3d Cir. 2013). The court drew a distinction between proceedings attacking federal convictions (under § 2255) and those attacking state convictions (under § 2254). *Thomas* reasoned that "no case or controversy generally exists before an actual § 2254 petition is filed" because a § 2254 petition attacks a state conviction by commencing a new civil action in federal court. *Id.* at 168. By contrast, § 2255 actions, the court reasoned, are "a continuation of a defendant's federal criminal case," eliminating any jurisdictional problems with considering a time extension request before the § 2255 motion is filed. *Id.* at 169–74.

The Third Circuit makes several thoughtful points in reaching this conclusion. But the key insight in the opinion, we would submit, cuts the other way. The Third Circuit noted that in 1948 Congress tried to relieve a burden on the federal district courts covering the few federal

prisons in the country. *Id.* at 170. Because both § 2254 and § 2255 actions at that time could be filed only in the district court covering the territory where the inmate was in custody, a small number of district courts were forced to handle all of the § 2255 actions in the country. No similar problem by the way confronted district courts with respect to § 2254 actions because the custody requirement related to state prisons situated in each State and thus mapped fairly well onto the district court territorial lines across the country. In trying to even out this work distribution, however, Congress did not somehow turn § 2255 actions into ongoing proceedings while leaving § 2254 actions as freestanding cases. It instead merely created a venue rule, in which the place of the federal criminal trial, like the place of the state criminal trial, would map onto the place of the federal § 2255 or § 2254 action.

The Supreme Court has confirmed as much. A few years after § 2255 was enacted, the Court observed that the "sole purpose" of § 2255 "was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." *United States v. Hayman*, 342 U.S. 205, 219 (1952). A § 2255 proceeding, the Court added, remains "an independent and collateral inquiry into the validity of the conviction." *Id.* at 222. Because Congress enacted § 2255 primarily to address venue work-distribution problems, it should come as no surprise that, shortly after its enactment, the Court explained that "a motion under § 2255, like a petition for a writ of habeas corpus[,] . . . is not a proceeding in the original criminal prosecution but an independent civil suit." *Heflin v. United States*, 358 U.S. 415, 418 n.7 (1959). The history of § 2255, then, supports rather than undermines our conclusion.

The Third Circuit also relied on the Rules Governing Section 2255 Proceedings for the United States District Courts in reaching its conclusion. *Thomas*, 713 F.3d at 171–72. When these rules first became law in 1976, the Advisory Committee noted that "a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action." *Rules Governing Section 2255 Proceedings for the United States District Courts*, Rule 1 advisory committee's notes, 1976. On top of that, the Third Circuit reasoned, these rules reveal several differences between § 2255 and § 2254: The rules call a § 2255 filing a "motion" and a § 2254 filing a "petition"; § 2255 does not require a filing fee, while § 2254 does; and both the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure apply in § 2255 proceedings, while

only the Federal Rules of Civil Procedure apply in § 2254 proceedings. *See, e.g., Thomas*, 713 F.3d at 171–72.

These points are all well-taken. But the Third Circuit's conclusion—that a court has jurisdiction over a request to extend time to file a § 2255 motion before that motion is filed— does not necessarily follow. Even assuming that § 2255 motions are "criminal" in nature (an issue that the Supreme Court recently refused to comment on, *see Wall v. Kholi*, 562 U.S. 545, 560 n.7 (2011)), they still begin a new proceeding. Even if § 2255 proceedings (unlike § 2254 proceedings) are "entered on the docket of the original criminal case" and even if they are "typically referred to the judge who originally presided over the challenged proceedings," the Supreme Court recently explained, "there is no dispute that § 2255 proceedings are 'collateral.'" *Wall*, 562 U.S. at 560; *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) (describing § 2255 proceedings as collateral); *Daniels v. United States*, 532 U.S. 374, 379 (2001) (same). That means that a § 2255 motion commences a "judicial review that occurs in a proceeding *outside of the direct review process.*" *Wall*, 562 U.S. at 560 (emphasis added); *see also* Black's Law Dictionary 318 (10th ed. 2014) (defining a collateral attack as "[a]n attack on a judgment *in a proceeding other than a direct appeal*" (emphasis added)). It thus matters not whether the district court retained jurisdiction over the original criminal case or whether the Civil or Criminal Rules govern the proceeding. The district court could not issue advisory opinions regarding a § 2255 proceeding that had not yet started and that remained a collateral proceeding. This takes us back to "a basic principle of Article III that a justiciable case or controversy must remain extant *at all stages of review.*" *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1335 (2013) (emphasis added) (quotation omitted). In order to create an Article III controversy and obtain more than an advisory opinion, Asakevich needed to file the § 2255 motion.

Through it all, we should not lose sight of the many *similarities* between § 2255 actions and § 2254 actions beyond the reality that they both involve separate collateral proceedings. When statutory violations are at issue "§ 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344 (1974); *see Reed v. Farley*, 512 U.S. 339, 353 (1994). "[P]recedents under § 2255 and under § 2254 may generally be used interchangeably." 3 Charles Alan Wright et al., Federal Practice and Procedure § 623 (4th ed. 2015). Courts treat

procedural defaults the same under both provisions. *See Francis v. Henderson*, 425 U.S. 536, 542 (1976). Most saliently, the one-year statutes of limitations for § 2255 actions and § 2254 actions share nearly identical language and were enacted at the same time as part of the Antiterrorism and Effective Death Penalty Act in 1996. *See* 28 U.S.C. §§ 2244(d)(1), 2255(f); *see also* Pub. L. No. 104-132, §§ 101, 105, 110 Stat. 1214, 1217, 1220 (1996). In view of these many similarities, it would make scant sense to treat § 2255 actions, but not § 2254 actions, as amenable to pre-action extension motions.

Even apart from its jurisdictional ruling, the Third Circuit did not point to any statute or rule that would give a district court authority to rule on a tolling motion *before* a new collateral § 2255 proceeding is commenced. The same problem that afflicts Asakevich's motion would have afflicted Thomas's motion.

In reaching this conclusion, we need not take sides on two potential safety valves that may occasionally apply when a litigant files a premature motion. Some pro se extension motions, it is possible, may have sufficient details about the proposed § 2255 action that a district court could fairly construe the extension motion as a § 2255 action. *See Castro v. United States*, 540 U.S. 375, 381–83 (2003). In other instances, a failed pro se extension motion may provide support for the equitable tolling of a late, but later *filed*, § 2255 action. In both settings, the district court's discretion, as opposed to its jurisdiction, would guide the answer. In this case, however, the first option is not available as there is nothing in the extension motion that would permit it to be treated as a § 2255 action. And it remains premature to consider the second option.

For these reasons, we affirm.